FILED
IN THIS OFFICE
AUG 19 2026
Clerk U.S. District Court
Greensboro, NC
BY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**DURHAM DIVISION**

| | | |
|---|---|---|
| BARRETT R. BREWER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:26-cv-848 |
| | ) | |
| v. | ) | |
| | ) | **VERIFIED COMPLAINT** |
| ADAM J. WILHELM, individually and d/b/a AJW LANDSCAPING; and AJW LANDSCAPING, | ) | **(JURY TRIAL DEMANDED)** |
| | ) | |
| Defendants. | ) | |

---

The Plaintiff, Barrett R. Brewer, appearing on his own behalf and pro se, complaining of the Defendants Adam J. Wilhelm, individually and d/b/a AJW Landscaping, and AJW Landscaping, alleges and says:

## INTRODUCTION

1. This action arises from Defendants engaging in a constant, and months-long campaign of a) harassing the Plaintiff, and b) defaming the Plaintiff to third-parties, with vile, heinous, and wildly false and disgusting accusations involving crimes of moral turpitude involving allegations of prostitution and sexual crimes, and of infidelity, all of which are patently false and despicable. In addition to being defamatory and harassing, the sheer volume and heinous allegations of the unwanted communications and publications are so outrageous as to shock the conscience, as Defendants' defamatory



Case 1:26-cv-00848 Document 1 Filed 08/19/26 Page 1 of 30

communications publish fictional and delusional crimes by Plaintiff against innocent children (un-named for the purpose of this pleading), all of which are false, without basis in reason and fact, and which have caused Plaintiff disgrace, contempt, ridicule, humiliation and embarrassment as to those to whom the defamatory statements have been published.

2. Plaintiff has sent Defendants numerous cease and desist communications, yet the unwanted and harassing communications and defamatory publications by Defendants continue, and have now escalated into recent demands that Plaintiff pay money to Defendants, presumptively in exchange for Defendants not further "publishing" these false, vile, and defamatory allegations.

3. Plaintiff has opened a Mount Pleasant, SC, investigation with the Town of Mount Pleasant, who has communicated to Defendants to stop contacting Plaintiff. The unwanted and harassing communications have continued and Town of Mount Pleasant Police have now issued a standing arrest warrant for Defendant Wilhelm in the State of South Carolina for the crime of Harassment in the Second Degree (S.C. Code Ann. § 16-3-1700(B)). Plaintiff has not answered for these charged crimes in the State of South Carolina.

4. Despite these numerous warnings for Defendants to stop, both from Plaintiff and SC law enforcement, Defendants have continued in their unlawful

tortious campaign against Plaintiff, causing substantial damage and necessitating that Plaintiff request the issuance of an order of injunctive relief from this United States District Court for the Middle District of North Carolina, in addition to an award of money damages in an amount to be determined by the trier of fact.

## PARTIES

5. The Plaintiff, Barrett R. Brewer ("Brewer" or "Plaintiff"), is a citizen and resident of Charleston County, South Carolina. Plaintiff is a licensed attorney and the owner and operator of Brewer Law Firm, LLC, located in Mount Pleasant, South Carolina. Plaintiff brings this action solely in his individual capacity and represents himself pro se.

6. Upon information and belief, the Defendant Adam J. Wilhelm ("Defendant Wilhelm") is a citizen and resident of Scotland County, North Carolina, residing at 12700 Barnes Bridge Road, Laurinburg, North Carolina 28352.

7. Upon information and belief, the Defendant AJW Landscaping ("AJW") is a landscaping business owned, operated, and controlled by Defendant Wilhelm and operated out of Defendant Wilhelm's residence at 12700 Barnes Bridge Road, Laurinburg, North Carolina 28352. Defendant Wilhelm conducts business individually and under the assumed name "AJW Landscaping." To the extent Defendant AJW is a separate legal entity, it is named herein as a Defendant; to the extent it is an assumed name or sole

proprietorship of Defendant Wilhelm, Defendant Wilhelm is named individually and d/b/a AJW Landscaping. Defendant Wilhelm used the electronic mail accounts, telephones, computers, and other devices of Defendant AJW to make and publish the communications described below. Wilhelm and AJW share bank accounts and funds, and upon information and belief, AJW is a d/b/a and Wilhelm is the sole proprietor and officer of the business, such that the two are alter-ego identities.

8. Defendants Wilhelm and AJW are collectively referred to herein as "Defendants."

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is a civil action between citizens of different States — the Plaintiff being a citizen of the State of South Carolina and the Defendants being citizens of the State of North Carolina — and the matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

10. This Court has personal jurisdiction over the Defendants because the Defendants are citizens and residents of North Carolina and are domiciled and conduct business in this State, and because the Defendants committed the tortious acts complained of, from within the State of North Carolina and toward Plaintiff in South Carolina.

11. Venue is proper in the Middle District of North Carolina pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this District — Scotland County, North Carolina lying within the Middle District of North Carolina — and because a substantial part of the events or omissions giving rise to the claims asserted herein, including the composition, transmission, and publication of the defamatory communications, occurred within this District.

## FACTUAL ALLEGATIONS

12. Plaintiff owns and operates Brewer Law Firm, LLC (the "Firm"), a South Carolina law firm. At all times relevant hereto, Amanda Davis was an associate attorney employed by the Firm, until such time as Ms. Davis' employment from the Firm was separated in the fall of 2025.

13. During the late summer and fall of 2024, Ms. Davis was diagnosed with a serious illness and, during a period of her treatment, resided at the residence of Wilhelm and home office of AJW Landscaping. While residing at Defendants' home and office, Ms. Davis continued to perform legal work remotely for the Firm at the office desk of AJW Landscaping. Plaintiff has come to understand through Defendants' disclosures in numerous unwanted and harassing email messages that Defendants' had installed secret recording devices in Defendants' home/office.

14. Beginning in January, 2025 Defendants began a persistent campaign of publishing to Plaintiff, and to other third parties, unwanted, harassing, false,

and defamatory communications falsely accusing Plaintiff of engaging in various horrific criminal acts involving Davis and/or her children, and/or acts which constituted adultery. These publications were directed at Plaintiff's wife, to Davis and her family members, and directed at Plaintiff and Plaintiff's spouse, and others, as more fully set forth below.

15. Defendants have used multiple email accounts associated with each Defendant, to send scores of email communications which variously and falsely accuse Plaintiff of breaking into Defendants' home/office and committing various criminal acts involving the false and heinous allegation of affairs with Davis and/or engaging in various criminal acts of prostitution with Davis and/or her family. These false, heinous, and defamatory publications constitute libel and are defamatory per se, as they concern false publications of crimes of moral turpitude and otherwise subjects Plaintiff to ridicule, contempt and disgrace.

16. These false, defamatory, and horrific publications of criminal acts have escalated in quantity, have escalated in terms of the wild and graphic allegations being published therein, and in terms of the number of internal home video clips, from apparently hidden videos, falsely publishing that these videos purport to show Plaintiff engaged in criminal activity, but instead the videos only show empty beds, empty chairs, empty couches, and/or empty rooms. Disturbingly, some of the videos and/or video links,

contained in these deranged emails, purport to show Davis in Defendants' home/office, working or watching television, and/or random and disturbing videos of random persons' feet.

17. These attached and embedded videos, which do not provide any evidence Plaintiff engaged in or committed the various published defamatory crimes and acts complained of herein, constitute evidence of Defendants' implied malice as Defendants' "evidence" does not facially support the false and defamatory publications.

18. Importantly, despite Defendants' constant false publications that these embedded videos demonstrate Plaintiff participating in crimes against children, neither Plaintiff nor the alleged children appear in any of Defendants' videos, taken by cameras hidden in his home. As stated above, the majority of videos show empty couches and beds, allegedly in Defendants' home/office, with no evidence of human activity, much less the presence of Plaintiff.

19. Plaintiff is not visible in any of these hidden security videos, taken in Defendants' home/office, precisely because Plaintiff has never been to Defendants' home/office, has never been in Defendants' home/office, has never met or seen Defendants, and/or has never engaged in the various false and horrific criminal acts Defendants have published and accused Plaintiff of.

20. Notably, Defendants have never provided any external security cameras showing Plaintiff at Defendants' home/office, on the property of Defendants' home/office, or entering Defendants' home/office.

21. Defendants admit in many of these false, defamatory, and deranged publications, that these same false and defamatory statements and emails have been published to third-parties and others known to Defendants (but identified only by first names in emails), and also including Plaintiff's spouse, Davis, Davis' current and former family members, random attorneys, Plaintiff's professional and licensure organizations, law enforcement, and to media.

22. Defendants have used these various email addresses to harass and inflict emotional distress on Plaintiff, and to defame Plaintiff to third-parties, all of which are associated with AJW Landscaping: ajwlandscaping@hotmail.com; adamwilhelm99@gmail.com (which populates under the name AJW Landscaping); ajwplants@pm.me; ajw2312@yahoo.com; and ajw_landscaping@icloud.com.

23. After Defendants initially published versions of these false and defamatory allegations to Plaintiff's spouse, Plaintiff and his law firm sent a cease and desist communication to Defendants on March 14, 2025. However, the harassing, false, and defamatory publications continued.

24. Defendants continued sending scores of false, defamatory, and harassing publications to Plaintiff and third-parties, which published variations of these same false and defamatory allegations.

25. One particular variation of these false and defamatory publications accuses Plaintiff of breaking into Defendants' home/office on or about May 8-9, 2025, to engage in these false criminal acts. However, not only do the embedded videos not show Plaintiff in Defendants' home/office, but Plaintiff was on a documented out of state family vacation during the exact same dates Defendants falsely alleged Plaintiff to be at Defendants home/office committing these alleged crimes.

26. In the fall of 2025, after a lull in publications and unwanted communications, Defendants' again began sending unwanted communications and defamatory publications, repetitively re-publishing the horrific false allegations of sexual crimes committed by Plaintiff.

27. On or about October 22, 2025, after more than ten months of false and defamatory publications and false and harassing communications, Plaintiff sent Defendants another cease and desist communication:

Mr. Wilhelm:

In the past this firm has issued you correspondence indicating that your communication with Jessica Brewer was (and continues to be) unwelcome, and that further communication would be considered harassment.

Now, we are informing you that your continued communication with myself, this law firm, and/or any employee of this law firm is unwelcome and unwarranted. I am sure that you intend the below as some kind of veiled threat when you reference an "investigation" combined with the payment of money. Please know that what you do on your own time, and concerning Ms. Davis is your own business and that of Ms. Davis. However, your conduct and communications in no way concerns this office, myself, or any employee of this office.

We are respectfully requesting that you immediately cease and desist any communication or contact with myself, this office, or anyone associated with this office. This is now the second threatening and unwanted communication I have received from you (much less your past threatening and unwanted communications with others) and it will not be tolerated. We will report these communications to authorities. Further communication will be reported to law enforcement as criminal harassment.

Thank you for your time and consideration,

Barrett R. Brewer

28. The false, defamatory, and harassing communications from Defendants continued thereafter. On November 7, 2025, Defendants violated the cease and desist, and wrote a threatening and cryptic email to Plaintiff, where, after threatening Plaintiff with "serious consequences both criminal and civil". Defendants then state, "As angry as this has made me I feel pretty sure this was out of character and I'm not sure ruining people's lives is the best decision . . . if I'm unable to talk with her in hopes of finding some answers and closure I'm afraid I'll be left with one option and I'm prepared to do what is necessary to find some solution & peace".

29. As a result of these communications further violating the cease and desist, Plaintiff initiated a criminal complaint with the Town of Mount Pleasant, South Carolina, police department. As a result of the investigation, the Town of Mount Pleasant Police department communicated with Defendants December 8, 2025, and confirmed a pattern of "unwanted communication had been established".

30. On December 8, 2025, the Town of Mount Pleasant (SC) Police Department made contact with Defendants at Plaintiff's request, in order to communicate a formal "no contact" command from law enforcement. Det. Daniel Eckert documented his communication with Defendant Wilhelm as follows:

In that investigation I was able to reach out and make contact with the subject, Adam J. Wilhelm, on December 8, 2025. At that time, I informed Mr. Wilhelm that Mr. Brewer didn't want any more contact from him. I told Mr. Wilhelm that If there was any further contact, criminal charges could be forth coming for harassment 2 nd degree. Mr. Wilhelm stated that he understood and assured me that there wouldn't be any further contact.

31. Despite the multiple no-contact requests, and despite Wilhelm's assurance there would be no further contact, on January 7, 2026, Defendants sent unwanted texts to Plaintiff. Plaintiff asked Defendants to "stop contacting us" and referred Defendants to the open Mount Pleasant police file.







32. On April 11, 2026, after several more harassing and unwanted communications were received by Plaintiff from Defendants, Mount Pleasant Police Department issued an arrest warrant for Defendant Wilhelm, for the crime of Harassment Second Degree in connection with these

publications and communications by Defendants. The warrant was signed and placed into the file on May 13, 2026.

33. On April 27, 2026, Town of Mount Pleasant Police followed up with Defendant Wilhelm again, regarding the April 2026 spate of unwanted and harassing communications. Detective Neese reported the following timeline:

> **NARRATIVE**
> 04/27/2026 I spoke with the victim and confirmed that he wanted to press charges. I then informed him that I would be confirming jurisdiction with the case and then I would be sending a search warrant to Google to confirm that the owner of the email address is Adam Wilhelm before charges can be pursued. This is the following timeline:
> 01/17/2025 The victim reported unwanted emails and text messages
> 03-01-2025 The victim sent the suspect a Cease-and-Desist order to the suspect.
> 09-01-2025 The suspect started text and emails again.
> 10-01-2025 The victim sent another Cease-and Desist order to the suspect
> 12-07-2025 The victim reported to the MPPD that the text and emails started back, and Sgt Eckert spoke with the suspect and advised him that if the contact continued, he would be arrested for harassment. The victim stated that he understood and would not contact the victim again.
> 04-11-2026 The victim reported to the MPPD that he received several emails from a Google email [redacted] who is believed to the be the same suspect that has been advised on several different occasions not to contact the victim.

34. On May 11 and May 13, 2026, The Town of Mount Pleasant Police Report reads as follows:

> **NARRATIVE**
> 05-11-2026 A warrant for Harassment 2 nd degree was constructed and sent to be signed. I contacted the victim and explained that it is a municipal charge and that we would not travel to North Carolina to pick him up, which he understood. I also explained that if the suspect is located in South Carolina, he will be arrested and a court date will be set. This case is being admin closed until the suspect is located. It should also be noted that the thumb drive from the Google search warrant was placed into evidence.

> **NARRATIVE**
> 5/13/2026 The warrant was signed and placed into [redacted] This case is being admin closed until the warrant is served.

35. Beginning in July and August, 2026, the unwanted and harassing emails and defamatory publications continued by Defendants. These newest communications started with a July 6, 2026, email, subject titled "Charges," whereby Defendants falsely accused Plaintiff of having committed "multiple crimes"; falsely asserted that Plaintiff was involved in criminal "offenses [that] involve Miss Davis's two daughters and possibly other unnamed minors"; falsely accused Plaintiff of "wire fraud, a federal crime," of "property crimes," and of participation in conduct that could "fall under The Racketeer Influenced and Corrupt Organization Act or RICO"; and falsely stated that "[t]here were illegal sexual acts where money was exchanged." Defendants published that they had "already made contact with the local Sheriffs Department", "the US Attorneys office" and the "ODC" (the South Carolina Office of Disciplinary Counsel, an attorney oversight organization operating under the South Carolina Supreme Court).

36. In this same July 6, 2026 email, titled, "Charges", Defendants sought to leverage Plaintiff with their false accusations, but this time expressly demanding the payment of money, writing: that Davis (Plaintiff's former employee) owed Defendants over $20,000 . . . "If you're interested in resolving these matters privately, I suggest you contact me ASAP." Since these communications, Defendants' demands for money payments from Plaintiff have become more pronounced. Defendants have no legitimate or

legal right or standing to demand money payments from Plaintiff for crimes Defendants claim were committed by Plaintiff.

37. Upon information and belief, Defendants take the position that the money was loaned out to Davis from Defendants business CashApp/Venmo accounts, accounts which Defendant AJW Landscaping likely uses to pay business expenses, vendors, and/or by which AJW Landscaping receives business payments. Thus, Defendant AJW Landscaping and Wilhelm's ulterior purpose of seeking payment from Plaintiff is ultimately a business association using the illicit enterprise of defamatory publications, harassing communications, and threats to further withhold publishing these false allegations to third-parties in exchange for monetary repayment to the AJW Landscaping business. In fact, the Cash App payments and loans for which Defendants are demanding payment/ repayment are directly associated with the business AJW Landscaping. See below Cash App handle of Defendants.

**Adam Wilhelm**

Feb 12 at 11:41 PM

38. Additionally, in separate false and defamatory publications to Davis, Defendants admit to also publishing these false and defamatory publications

about Plaintiff to third-parties for the purpose of fomenting rage and anger of others toward Plaintiff.

39. In a July 6, 2026, email communication to Davis at Plaintiff's firm email address, Defendants wrote, concerning Plaintiff, "If he doesn't make arrangements with me today, its gonna be game over..."

40. In subsequent unwanted and harassing August, 2026, emails, Defendants continue the patently ridiculous and false allegations against Plaintiff of aiding and abetting prostitution of Davis and her children at Defendants' home/office, and attached numerous videos embedded in the communication showing what is believed to be empty rooms and empty furniture in Defendants' home/office, and/or showing images of Davis normatively occupying the home, and in one image/video, Defendants provided video of a random person's feet. Yet absolutely none of the videos or images contained anything remotely approximating evidence of the complained of crimes of moral turpitude – precisely because the false and defamatory publications about Plaintiff are patently false. Further, Defendants admit in these August 2026, communications to Plaintiff publishing these false allegations to other third-persons.

41. Not including the above-referenced email and text communications to Plaintiff, which number around 15 or so in number over the course of an approximate year, Defendants have sent another approximately 740 emails

to Plaintiff's employees and spouse at law firm email addresses at Plaintiff's firm. The vast majority of these communications publish false and defamatory statements about Plaintiff, too numerous to be specifically recounted and detailed herein, but which Plaintiff will supply to the Court upon request in a separate drive. These false and defamatory publications to Plaintiffs' firm employees not only variously accuse Plaintiff of infidelity, prostitution, aiding and abetting prostitution, breaking and entering, theft, and, most disturbingly of all, repeating false and heinous allegations of sexual crimes and/or exploitation of minors. Worse yet, these emails, which constitute defamatory publications in and of themselves, and further admit to publishing these false and defamatory publications about Plaintiff to even more unknown third-persons (often using pronouns or first names only of persons these allegations are being published to) who are not parties to the emails.

42. Upon information and belief Defendant Wilhelm has had substance abuse problems in the past and has been convicted of a past felony. The deranged and illogical nature of these harassing emails and defamatory publications, and Defendants' insistence that these videos demonstrate evidence of criminal activity by Plaintiff, would not be considered evidence of a crime by any sane and competent person, since the videos only show Defendants' empty furniture in an empty room, or a person sitting on a couch or working

at a desk. This underscores the probability that Defendants are acting under the influence of either illicit substances and/or are affected by a psychosis rendering Defendants mentally unstable and most probably constituting a threat to society.

43. Plaintiff pleads the Defendants' fault and state of mind in the alternative. First, and principally, the Defendants published the false and defamatory statements negligently, in that a reasonable person in the Defendants' position — reviewing the very recordings upon which the Defendants purport to rely, which depict only empty beds, chairs, couches, and rooms, and in which Plaintiff never appears — would have known the statements to be false and would not have published them. Because the publications are defamatory per se, common-law malice and damages are presumed as a matter of law.

44. Second, and in the alternative, the facial inadequacy of the Defendants' purported "evidence," the inherent improbability of the accusations, the escalating volume and depravity of the accusations published without any supporting proof, and the Defendants' persistence in publishing after repeated notice that the accusations were false, are circumstantial evidence from which the trier of fact may find that the Defendants in fact entertained serious doubts as to the truth of their publications and published in reckless disregard of the truth.

45. Third, and in the further alternative, the Defendants published with actual knowledge of the falsity of their statements.

46. Separately, and consistent with each of the foregoing, the Defendants acted with malice in the sense of personal ill will toward Plaintiff, as shown by their stated purpose of fomenting the anger of third persons against Plaintiff and their use of the publications to coerce the payment of money.

47. A determination that the Defendants subjectively believed any of their statements to be true — including by reason of the impaired judgment, substance abuse, and/or mental instability alleged herein — is not inconsistent with, and does not defeat, the findings of negligence, presumed malice, reckless disregard, or personal ill will described above.

48. As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and continues to suffer presumed general damages, humiliation, embarrassment, mental anguish, emotional trauma and distress, and injury to his reputation.

**FOR A FIRST CAUSE OF ACTION**
**(Defamation Per Se)**

49. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

50. The Defendants published to third persons false statements concerning Plaintiff, including but not limited to the statements that Plaintiff committed

adultery, that Plaintiff committed crimes involving minors, that Plaintiff committed wire fraud, property crimes, and racketeering, and that Plaintiff engaged in illegal sexual acts.

51. The foregoing statements are false.

52. The Defendants published the foregoing statements to third persons, including Plaintiff's spouse, employees of the Firm, law enforcement, and others, in writing (constituting libel) and, to the extent any such statements were also communicated orally, orally (constituting slander), without privilege or authorization. Each such publication was composed, transmitted, and published by Defendant Wilhelm in the course and scope of, and by means of the instrumentalities of, the business of AJW Landscaping — including AJW Landscaping's electronic mail accounts, telephones, computers, and other devices — and from the premises of AJW Landscaping, such that the injury to Plaintiff arose out of the oral and written publication, in the course of AJW Landscaping's business, of material that libels and slanders Plaintiff. Defendant AJW Landscaping is directly and vicariously liable for each such publication.

53. The Defendants' statements constitute defamation per se in that they: (a) charge Plaintiff with the commission of infamous crimes and crimes involving moral turpitude; (b) tend to impeach Plaintiff in his trade, business, and profession as a licensed attorney; and (c) otherwise tend to subject Plaintiff

to ridicule, contempt, and disgrace. Because the statements are defamatory per se, malice and damages are presumed as a matter of law.

54. Plaintiff is a private figure and is neither a public official nor a public figure, and the applicable standard of fault for liability is negligence. The Defendants were negligent in publishing the false statements of and concerning Plaintiff, in that a reasonable person would have known the statements to be false and would not have published them. To the extent the trier of fact determines that the Defendants subjectively believed their statements to be true — including by reason of the impaired judgment, substance abuse, and/or mental instability alleged above — the Defendants nonetheless published the statements negligently and without knowledge of their falsity. The matters published concerning Plaintiff and his family were matters of purely private concern, such that presumed and punitive damages are recoverable upon the showing of negligence and presumed malice set forth above. In the alternative, and to the extent any publication is deemed to address a matter of public concern, Plaintiff pleads that the Defendants published with reckless disregard for the truth or falsity of their statements, and in the further alternative with knowledge of their falsity, as alleged in Paragraph 43 above.

55. The Defendants' defamatory statements were not made under any privilege, qualified, absolute, or otherwise, and any such privilege that might otherwise

apply was abused and forfeited by the Defendants' malice and by their continued publication after repeated demands and warnings that the statements were false and unwelcome.

56. As a direct and proximate result of the Defendants' defamation, Plaintiff has suffered actual, presumed, and special damages, including injury to reputation, humiliation, embarrassment, emotional distress, in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00), to be determined by the trier of fact.

57. To the extent the trier of fact finds that the Defendants acted with actual malice, or with willful, wanton, and reckless disregard for the rights of Plaintiff, Plaintiff is entitled to an award of punitive damages pursuant to N.C. Gen. Stat. Chapter 1D. This allegation is pleaded in the alternative to, and does not withdraw, the allegations of negligence set forth above. To the extent Defendant AJW Landscaping is a separate legal entity, the conduct giving rise to punitive damages was participated in, ordered, and condoned by Defendant Wilhelm as the sole proprietor, officer, and controlling person of AJW Landscaping, within the meaning of N.C. Gen. Stat. § 1D-15(c).

**FOR A SECOND CAUSE OF ACTION**
**(Intentional Infliction of Emotional Distress)**

58. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

59. The Defendants engaged in extreme and outrageous conduct, including a sustained campaign, over a period exceeding eighteen months, of publishing false accusations that Plaintiff committed adultery and heinous crimes — including crimes involving minors — to Plaintiff's wife, to his employees, to Amanda Davis and her family, to third-parties, both known and unknown, to professional and licensing organizations, to law enforcement, and to the media; circulating surreptitious recordings and videos; continuing this conduct after multiple cease-and-desist demands and an express warning from law enforcement; and using the false accusations in an effort to coerce the payment of money. Such conduct exceeds all bounds usually tolerated by a decent society.

60. The Defendants intended to cause, or acted with reckless indifference to the likelihood that their conduct would cause, Plaintiff severe emotional distress.

61. The Defendants' conduct did in fact proximately cause Plaintiff severe emotional distress, including humiliation, embarrassment, anxiety, and emotional trauma.

62. As a direct and proximate result of the Defendants' conduct, Plaintiff is entitled to recover actual and consequential damages in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00), to be determined by the trier of fact, together with punitive damages pursuant to N.C. Gen. Stat. Chapter 1D.

**FOR A THIRD CAUSE OF ACTION**
**(Negligent Infliction of Emotional Distress**
**— Pled in the Alternative to the Second Cause of Action)**

63. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

64. In the alternative to the Second Cause of Action, and to the extent the trier of fact determines that the Defendants did not act intentionally or recklessly, the Defendants engaged in negligent conduct, including the negligent publication of false statements concerning Plaintiff as alleged above, without the exercise of due care.

65. It was reasonably foreseeable to the Defendants that their negligent conduct would cause Plaintiff severe emotional distress.

66. The Defendants' negligent conduct did in fact proximately cause Plaintiff severe emotional distress, including but not limited to fear for safety of the Plaintiff and his family and co-workers, fear of the disclosure of false allegations and the disgrace, humiliation, embarrassment, such false allegations would normally and proximately cause.

67. As a direct and proximate result of the Defendants' negligence, Plaintiff is entitled to recover actual and consequential damages in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00), to be determined by the trier of fact.

## FOR A FOURTH CAUSE OF ACTION
## (Injunctive Relief)

68. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

69. The Defendants have repeatedly and persistently engaged in, and upon information and belief threaten to continue to engage in, the publication of false and defamatory statements concerning Plaintiff and unwanted, harassing communications directed to and concerning Plaintiff, his wife, his family, and his employees.

70. The Defendants' continued course of conduct — persisting after multiple cease-and-desist demands, a law-enforcement warning, and the issuance of a criminal warrant — demonstrates that the Defendants will not cease their conduct absent an injunction and that any remedy at law is inadequate to protect Plaintiff. Plaintiff and his family fear for their safety, and Defendants have been documented as showing up in the State of South Carolina and leaving evidence that they have trespassed, when not wanted, including leaving the trash of fast food cups with Defendants' name on the side as an implied threat that Defendants have trespassed upon the properties of their victims.

71. Plaintiff will suffer irreparable injury to his reputation, profession, marriage, and family, not fully compensable in money damages, if the Defendants are not enjoined. Plaintiff has a likelihood of success on the merits of his claims.

72. Plaintiff is entitled to preliminary and permanent injunctive relief enjoining the Defendants, and each of them, and their agents, from (a) publishing, in any medium and whether in their own names or under any alias, statements concerning Plaintiff, his spouse, his family, or his employees that have been adjudged false and defamatory; and (b) contacting or communicating, directly or indirectly, with Plaintiff, his spouse, his family members, and his employees, and with third persons, concerning the false allegations set forth herein.

**FOR A FIFTH CAUSE OF ACTION**
**(Declaratory Judgment — 28 U.S.C. §§ 2201 and 2202)**

73. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

74. On August 12, 2026, Defendants, using the email account ajw_landscaping@icloud.com, sent Plaintiff a written communication announcing their intent to file a civil lawsuit against Plaintiff, individually, and against Brewer Law Firm, LLC, for "Negligent Infliction of Emotional Distress," and asserting, among other things, that Plaintiff (a) assisted Amanda Davis in acts of prostitution and helped to "find" and "deliver" clients to Defendants' home/office; (b) unlawfully entered Defendants' North Carolina home/office on or about May 8–9, 2025; and (c) participated in the "sexual exploitation" and possible "sex trafficking" of Ms. Davis's then-minor

child and "possibly her high school friend(s)." Defendants further asserted that "these matters will fall under federal jurisdiction," and again invited Plaintiff to "find a resolution privately," directing Plaintiff to contact Defendants by telephone.

75. As Defendants have no private cause of action against Plaintiff, these demands for private resolution are simply poorly disguised innuendo for blackmail.

76. On any specific date that Defendants allege that Plaintiff was in Defendants' home/office in Laurinburg, North Carolina, Plaintiff has indisputable evidence that he was not in Laurinburg, North Carolina, and has never been to Defendants' home/office in Laurinburg, North Carolina.

77. Each of the foregoing accusations is false. Plaintiff has never been to or entered Defendants' residence or office, never assisted or participated in any act of prostitution, never found, delivered, or procured any person for any such purpose, never had any illicit involvement whatsoever with any minor child of Amanda Davis or of any other person, and committed none of the acts, crimes, or wrongs alleged by Defendants.

78. By reason of Defendants' repeated assertions, and their express and reiterated threats to sue Plaintiff, an actual, justiciable, and immediate controversy exists between Plaintiff and Defendants concerning whether Plaintiff bears any civil liability to Defendants, whether for negligent infliction

of emotional distress or upon any other theory, arising out of the matters alleged in Defendants' communications. The controversy is definite and concrete, touches the legal relations of parties having adverse legal interests, and is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

79. Plaintiff is entitled to a declaratory judgment declaring that: (a) the accusations described herein are false; (b) Plaintiff engaged in none of the acts or conduct alleged by Defendants; (c) Defendants have neither standing, nor any valid claim against Plaintiff for negligent infliction of emotional distress, or for any other tort or cause of action, arising out of the matters alleged in Defendants' communications and defamatory publications; and (d) Plaintiff has no liability of any kind to Defendants arising from any of the matters alleged.

80. A declaratory judgment is necessary and appropriate to resolve this controversy, to relieve Plaintiff from the uncertainty and insecurity created by Defendants' accusations and threats, and to terminate Defendants' ongoing effort to use those accusations to coerce the payment of money from Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, Barrett R. Brewer, respectfully prays that the Court:

a. Enter judgment against the Defendants, jointly and severally, for actual, presumed, consequential, and special damages in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00), to be determined by the trier of fact;

b. Award punitive damages against the Defendants, jointly and severally, pursuant to N.C. Gen. Stat. Chapter 1D, in an amount to be determined by the trier of fact;

c. Grant preliminary and permanent injunctive relief enjoining the Defendants as set forth in the Fourth Cause of Action, and as will be set forth in the coming Motion for Preliminary Injunction;

d. Enter a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, declaring that the accusations described herein are false, that Defendants have no valid claim against Plaintiff for negligent infliction of emotional distress or upon any other cause of action arising from the matters alleged, and that Plaintiff has no liability to Defendants arising from any of those matters;

e. Tax the costs of this action, including such fees as are allowed by law, against the Defendants;

f. Grant Plaintiff a trial by jury on all issues so triable; and

g. Grant such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED.** Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**SIGNATURE BLOCK NEXT PAGE**

This the _14__ day of August, 2026.

Respectfully submitted,

**Barrett R. Brewer**
Plaintiff, Pro Se
510 Mill Street, #2B
Post Office Box 1847
Mount Pleasant, SC 29465
Telephone: (843) 779-7454
Email: barrett@brewerlawfirmsc.com

## VERIFICATION

STATE OF SOUTH CAROLINA
COUNTY OF CHARLESTON

Barrett R. Brewer, being first duly sworn, deposes and says that he is the Plaintiff in the above-entitled action; that he has read the foregoing Complaint and knows the contents thereof; and that the same is true of his own knowledge, except as to those matters stated upon information and belief, and as to those matters he believes them to be true.

______________________________
**Barrett R. Brewer**

Sworn to and subscribed before me
this the 14 day of August, 2026.

______________________________
Notary Public
My Commission Expires: 04/26/2031

MICHELLE ROBINSON
NOTARY
My Comm. Exp.
04/26/2031
PUBLIC
SOUTH CAROLINA